UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

CRIMINAL CASE NO. 13-65-JMH-CJS
CIVIL CASE NO. 13-7328-JMH-CJS

UNITED STATES OF AMERICA                                              PLAINTIFF

v.                          REPORT AND RECOMMENDATION

JOHN COLEMAN                                                          DEFENDANT

\* \* \* \* \* \* \* \* \* \*

On December 26, 2013, John Coleman, *pro se*, filed a Motion To Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. (R. 22). On January 15, 2014, Coleman filed an "Informal Brief in Support of a 28 U.S.C. § 2255 Motion." (R. 25). On February 10, 2014, the Court ordered the Government to file a Response to Coleman's Motion. (R. 26). On March 14, 2014, the United States filed its Response and on March 21, 2014, filed an Affidavit in support of its Response.[1] (R. 29, 30). On April 3, 2014, Coleman filed his Reply.[2] (R. 33).

Having all relevant documents and records before the Court, the matter is now ripe for consideration and preparation of a Report and Recommendation. 28 U.S.C. § 636(b). For the

---

[1] Rule 7 of both the Rules Governing § 2255 Cases in the United States District Courts and the Rules Governing § 2254 Cases in the United States District Courts (applicable to § 2241 actions, *see* Rule 1(b)) provide authority for the Court to accept affidavit evidence. Moreover, Defendant has not opposed its submission.

[2] On May 19, 2014, Coleman sent a letter "[t]o whom it may concern" indicating that his review of the docket sheet revealed that his Reply was not received by the Court as a pleading in support of his § 2255 Motion. (R. 35). His Reply was received and docketed on April 3, 2014 (*see* R. 33), and has been considered by the Court in reaching its recommended adjudication.

reasons stated below, it will be herein **recommended** that Coleman's Motion be construed as a hybrid filing arising under both 28 U.S.C. § 2255 and § 2241. It will be **further recommended** that all claims be **denied.**

I.	**FACTUAL AND PROCEDURAL HISTORY**

On October 1, 2008, Coleman was sentenced in Lexington criminal action 07-cr-185-JBC to 92 months of incarceration after entering a guilty plea to conspiracy to distribute five grams or more of crack cocaine. *See* R. 130-133 in *United States v Coleman*, 5:07-cr-185-JBC; *see also* R. 15, at ¶ 3(a) (Plea Agreement in case at bar). Coleman's sentence in that 2007 case was subsequently reduced to 77 months based on the amendments to the crack cocaine sentencing guidelines. (R.15, at ¶ 3(a)). On or about February 19, 2013, Coleman was transferred to Dismas House Charities, Inc. ("Dismas House") to serve the remainder of his sentence, and had a projected release date of August 17, 2013. (*Id*. at ¶ 3(b)-(c)). On April 22, 2013, Coleman signed out of Dismas House and was required to return by 5:00 p.m. (*Id*. at ¶ 3(d)). Coleman did not return as instructed. (*Id*.) On April 23, 2013, the Bureau of Prisons ("BOP") notified the United States Marshals of Coleman's escape status. On April 24, 2013, the Marshals located Coleman and placed him back in federal custody. (*Id*. at ¶ 3(e)).

Meanwhile, on March 3, 2013, a federal grand jury returned an indictment charging Coleman with escape from the custody of the Attorney General in violation of 18 U.S.C. § 751(a), after willfully failing to return to the Dismas House within the time prescribed, in violation of 18 U.S.C. § 4082(a). (R. 1). On July 22, 2013, Coleman pled guilty, pursuant to a written Plea Agreement, to the sole count of the Indictment. (R. 14-15, 27). On August 19, 2013, the presiding District Judge

sentenced Coleman to 15 months of imprisonment, to run consecutive with Coleman's sentence imposed in case number 5:07-cr-185-JBC. (R. 19, 28).

On November 21, 2013, Coleman sent a letter to the presiding District Judge seeking credit on his sentence for time spent in custody prior to his sentencing on the escape charge.[3] (R. 21). The presiding District Judge ordered the letter to be filed of record, instructed the Clerk of Court to send Coleman an AO Form 243, and gave Defendant until January 17, 2014, to file a properly completed and verified § 2255 Motion. (R. 20). Defendant timely filed his Motion and later filed an "Informal Brief in Support." (R. 22, 25). In his filings, Coleman raises essentially the following three points: 1) he is entitled to credit for time served prior to sentencing; 2) his counsel provided him ineffective assistance during plea negotiations for failing to secure his jail credits; and 3) his plea was involuntary and unknowing because he was assured by his counsel and the Assistant United States Attorney ("AUSA") that he would receive credit toward the escape sentence for time served prior to sentencing.

## II.      ANALYSIS

While Coleman's latter two claims can be considered by the Court under 28 U.S.C. § 2255 in that they challenge his federal conviction and sentence, the claim seeking credit for time served is considered under 28 U.S.C. § 2241 because it challenges the execution of his sentence. *See Woody v. Marberry*, 178 F. App'x 468, 471 (6th Cir. 2006) (determination of sentencing credit for time served prior to sentencing properly considered under § 2241 since issue relates to how sentence is being executed); *Alvey v. United States*, 899 F.2d 1221, 1990 WL 40080, at *1 (6th Cir. 1990)

---

[3]While the letter is not dated, the envelope filed in the record contains a postmark of November 21, 2013. (R. 21-1).

(table decision) ("[A] federal prisoner who wishes to raise a sentencing credit issue may do so only by filing a petition for a writ of habeas corpus under 28 U.S.C. § 2241."). Accordingly, it will be recommended that Coleman's Motion be construed to be a hybrid filing, containing claims under both 28 U.S.C. § 2241 and § 2255. *See United States v. Click*, No. 10-cr-1-DLB, 2013 WL 65474, at *1 (E.D. Ky. Jan. 4, 2013) (construing a § 2255 Motion as a hybrid filing since contained claims under both § 2255 and § 2241).

### A. Section 2241 Claim[4]

Coleman argues that he should be given sentencing credit for the time he spent incarcerated after his arrest on April 24, 2013, and until August 19, 2013, the date he was sentenced on the escape charge. (R. 25, at 2-3). The Government responds that Coleman has not demonstrated he exhausted his administrative remedies and, even if he had so exhausted, he is not entitled to credit for this time period against his sentence for escape because it was credited toward the sentence he was serving at the time of the escape. (R. 29, at 3-5).

#### 1. Coleman will not be required to exhaust administrative remedies.

Federal prisoners must exhaust their administrative remedies before they file a § 2241 petition. *See Fazzini v. Northeast Ohio Corr. Ctr.*, 473 F.3d 229, 231 (6th Cir. 2006) (citing *Urbina v. Thoms*, 270 F.3d 292, 295 n.1 (6th Cir. 2001); *Little v. Hopkins*, 638 F.2d 953, 953-54 (6th Cir. 1981)). The exhaustion requirement may be excused, however, where it is established that such exhaustion would be futile or unable to afford the inmate the relief he seeks. *Fazzini*, 473 F.3d at 236 (citing *Aron v. LaManna*, 4 F. App'x 232, 233 (6th Cir. 2001); *Goar v. Civiletti*, 688 F.2d 27,

---

[4]Coleman is incarcerated at FCI Manchester located in Manchester, Kentucky, which is within the Eastern District of Kentucky. Thus, this Court has proper jurisdiction to consider his § 2241 claim. *See Alvey,* 1990 WL 40080, at *1.

28-29 (6th Cir. 1982)); *see also Ramirez v. Withers*, No. 6:13-43-DCR, 2013 WL 2903278, at **2-3 (E.D. Ky. June 13, 2013).

The Bureau of Prisons maintains a procedure for inmates to administratively challenge any aspect of their confinement, including the computation of their sentences. *See United States v. Wilson*, 503 U.S. 329, 335 (1992); 28 C.F.R. §§ 542.10-542.16. The administrative remedy process for federal prisoners includes four steps: (1) a request for informal resolution with unit staff; (2) a formal grievance filed with the warden; (3) an appeal to the appropriate regional office; and (4) an appeal to the Central Office. *See* 28 C.F.R. §§ 542.13-542.15. While the Government's submissions in response to the Motion evidence that Coleman at least began the administrative process,[5] Coleman has not demonstrated he exhausted his administrative remedies through an appeal to the Central Office, and he does not claim to have done so.

Instead, Coleman argues that requiring him to exhaust his administrative remedies would render the issue moot since he will have been released prior to exhaustion. He further argues that he was told by jail officials that he needed to go to the Court to correct any error. (R. 33, at 3). The Government does not indicate that the record is incomplete or warrants further development in its Response. Instead, it argues that its determination of Coleman's sentence is correct.

In *Ramirez*, United States District Judge Danny Reeves addressed a similar situation and exercised his discretion in waiving the exhaustion requirement, stating:

> This Court has an established history of consistently enforcing the administrative exhaustion requirement in light of the laudable goals it serves. But it has also held that, under rare circumstances, where an agency "has evidenced a strong position on

---

[5] The Government has submitted an email from John Benge, Supervisor, Correctional Systems, that states "[w]e have tried to address Coleman's concerns regarding this issue several times," indicating Coleman had at least initiated step one of the administrative process. (R. 29-3).

5

the issue together with an unwillingness to reconsider," requiring a prisoner to return to prison officials to receive the same answer through formal channels that he has firmly received through informal ones may be a pointless exercise. *Colton v. Ashcroft*, 299 F. Supp. 2d 681, 689-90 (E.D. Ky. 2004) (internal quotation marks omitted); *see also Gibson v. Berryhill*, 411 U.S. 564, 575 n.14 (1973) (noting that courts have refused to require the exhaustion of administrative remedies where the administrative agency had "predetermined the issue before it"). This is particularly so where, as here, the BOP's determinations regarding the calculation of Ramirez's sentence are dictated by federal statute. As a result, and because the BOP has informally answered the precise question raised by Ramirez's petition, the Court will address the merits of Ramirez's claims, notwithstanding his failure to administratively exhaust them.

*Ramirez*, 2013 WL 2903278, at *3.

Similarly here, a determination of what credit Coleman is entitled to on his current sentence is calculated by the BOP pursuant to statute,[6] and the United States has submitted evidence of the BOP's strong position that it has correctly calculated his sentence. (R. 29, 30). Requiring Coleman to pursue his administrative remedies in this circumstance would thus be a futile exercise. Accordingly, Coleman's failure to demonstrate exhaustion should be excused and the Court should consider the merits of Coleman's claim.

### 2. The time Coleman was incarcerated prior to sentencing was properly credited toward his yet unserved time on his prior federal sentence.

Coleman argues that he should be given sentencing credit for the time he spent incarcerated after his arrest on April 24, 2013, until his August 19, 2013, sentencing. (R. 25, at 2-3). In his November 21, 2013, letter to presiding District Judge Hood, which Coleman incorporated in his Reply, Coleman asserts he does not think his presentence incarceration should be credited to his prior

---

[6]The United States Attorney General, not a federal court, has the authority to compute sentencing credits for the time that a defendant spends in detention prior to sentencing under 18 U.S.C. § 3585(b). *United States v. Wilson*, 503 U.S. 329, 335 (1992). However, a federal district court may grant a prisoner claiming the miscalculation of sentencing credits relief pursuant to 28 U.S.C. § 2241. *Woody,* 178 F. App'x at 471.

6

sentence because he had already served that sentence. (R. 33, at 2). The Government has provided evidence, however, that Coleman was properly credited this time on the sentence he was serving at the time of his escape. (R. 29, 30).

Calculation of sentencing credit for time spent in custody prior to sentencing is governed by 18 U.S.C. § 3585(b). Section 3585(b) prohibits awarding dual credit on a federal sentence. Specifically, § 3585(b) states:

> (b) Credit for prior custody.-A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences-
>
> (1) as a result of the offense for which the sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> *that has not been credited against another sentence.*

18 U.S.C. § 3585(b) (emphasis added). Thus, Coleman is entitled to credit against his current sentence for the time he spent in jail prior to his sentencing only if that time "has not been credited against another sentence." *See Wilson*, 503 U.S. at 334; *Doan v. Lamanna*, 27 F. App'x 297, 299 (6th Cir. 2001) (defendant not entitled to credit for pretrial detention because he received credit for that time toward another federal sentence).

Here, Coleman admitted in his Plea Agreement that he was transferred to the Dismas House on February 19, 2013, and had a projected release date of August 17, 2013. (R. 15, at ¶ 3(c)). He also admitted that on April 22, 2013, he signed out of the Dismas House, where he was being housed by the BOP, and failed to return as instructed. (*Id.*). The United States Marshals were notified of Coleman's escape status and, on April 24, 2013, they located him and placed him back in federal

7

custody. (*Id*.). Upon his return to custody on April 24, 2013, he resumed serving his 77-month term of imprisonment in case 5:07-cr-185-JBC. (R. 29-1, 30). While his prior projected release date on the sentence in 5:07-cr-185-JBC was August 17, 2013, this date was extended one day to account for the day Coleman was on escape status. (*Id*.). On August 18, 2013, Coleman completed his sentence imposed in case 5:07-cr-185-JBC. (R. 29-1, at 3; R. 30). Thus, Coleman was credited the time from April 24, 2013, to August 18, 2013, toward his remaining sentence imposed in case 5:07-cr-185-JBC. (*Id*.). Then on August 19, 2013, Coleman began serving his 15-month sentence on the escape charge. (*Id*.).

Accordingly, the record supports a finding that the time Coleman spent incarcerated after his April 24, 2013, arrest until his sentencing date has been properly credited toward his sentence in 07-cr-185-JBC. Since § 3585(b) only permits credit for time spent in detention prior to the date a sentence commences if that time "has not been credited against another sentence," Coleman is not entitled to any additional credit for this April 24 to August 18, 2013, time period. *See Wilson*, 503 U.S. at 334. Accordingly, it will be recommended that this claim be denied.

    **B.**    **Section 2255 Claims**

Under § 2255, a federal prisoner may seek habeas relief on grounds that his conviction or sentence violated the Constitution or laws of the United States, that the court was without jurisdiction to impose the sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a). A § 2255 motion does not have to be founded on constitutional error or even federal law. *Watt v. United States*, 162 F. App'x 486, 502-03 (6th Cir. 2006). But to succeed on a § 2255 motion alleging constitutional error, a defendant "must establish an error of constitutional magnitude which had a substantial and

8

injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). To obtain relief under § 2255 for a non-constitutional error, a defendant must establish either a fundamental defect in the criminal proceedings which inherently resulted in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process. *See Riggs v. United States*, 209 F.3d 828, 831 (6th Cir. 2000), *recognized as abrogated on other grounds by Kumar v. United States*, 163 F. App'x 361, 366 (6th Cir. 2006); *see also McNeal v. United States*, 17 F. App'x 258, 260-61 (6th Cir. 2001). Therefore, a defendant must allege in his § 2255 motion that: (1) his conviction was the result of an error of constitutional magnitude; (2) his sentence was imposed outside of statutory limits; or (3) there was an error of law or fact so fundamental as to render the proceedings invalid. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (citing *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)). Lastly, a defendant must prove his allegations by a preponderance of the evidence. *Pough*, 442 F.3d at 964.

### 1. Ineffective assistance of counsel claim should be denied

Coleman argues that his counsel provided ineffective assistance in failing to secure his sentencing credit toward his escape charge for the time served prior to his sentencing after counsel assured him his time would be so credited.[7] The Government did not respond to this argument.

To establish ineffective assistance of counsel, Coleman must show that his counsel's performance was deficient and that the deficiency prejudiced him. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The *Strickland* test applies to challenges to guilty pleas based on claims

---

[7]While Coleman's Plea Agreement contained a waiver of his right to collaterally attack his guilty plea, conviction and sentence, the waiver specifically excluded claims of ineffective assistance of counsel. (R. 15, at ¶ 8).

9

of ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Thus, in order to obtain relief, Coleman must establish that counsel's advice was not within the range of competence demanded of attorneys in criminal cases–that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. 687; *see also Hill*, 474 U.S. at 59. Coleman must also meet the prejudice requirement by demonstrating that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. The Supreme Court has cautioned, however, that "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland,* 466 U.S. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*.

Coleman has not demonstrated that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687. Coleman asserts counsel should have secured sentencing credit on his escape charge for the time he spent in detention prior to sentencing. As explained above, Coleman received credit for this time period toward his sentence in case 5:07-cr-185-JBC. Thus, counsel's performance in securing Coleman sentencing credit did not fall below an objective standard of reasonableness because he received credit for this time period toward another sentence, and the law prohibits double counting. 18 U.S.C. § 3585(b); *Wilson,* 503 U.S. at 337; *see cf. United States v. Burks*, No. 03-80681, 2009 WL 1664368, at *3 (E.D. Mich. June 15, 2009) (BOP correctly calculated pre-sentence credits owing defendant and therefore ineffective assistance of counsel claim failed).

10

Further, Coleman cannot meet the prejudice prong. Specifically, Coleman's assertion that he would not have pled guilty but for his understanding that he would receive credit on his sentence for the time served presentence is not supported by the record. The presiding District Judge verified at the plea hearing that Coleman understood he could be sentenced to more time than that in the parties' sentencing recommendations. (R. 27, at 12). Despite knowing he could be sentenced above what he expected, Coleman stated it was his desire to enter a guilty plea.

Additionally, nothing in the record reflects that the Government would have been unable to prove the charge against Coleman. Given the facts, the likelihood of a conviction would have been great.[8] Defense counsel was successful in obtaining a plea agreement that reduced Coleman's sentencing exposure by affording him a two-level reduction for acceptance of responsibility, thereby decreasing his offense level from level 9 to level 7, which in turn reduced his guideline range from 21-27 months to 15-21 months. (R. 15, at ¶ 5).

Ultimately, Coleman was sentenced to 15 months–the low end of the guideline range. The Plea Agreement shaved a minimum of 6 months off of Coleman's sentence. It is illogical that he would risk this benefit and proceed to trial if not credited with the less than four months of pretrial detention that were being credited to another sentence. *See Wooten v. Raney*, 112 F. App'x 492, 496 (2004) (no prejudice demonstrated because false promise of credit for time served did not effect in any meaningful degree the attractiveness of the deal offered and accepted); *Carrillo-Garcia v. United States*, No. 2:08-cv-734, 2011 WL 1103855 (S.D. Ohio Jan. 10, 2011) (petitioner failed to establish prejudice for counsel misleading him into believing he would receive credit on federal charge for

---

[8]The record indicates Coleman admitted to a Lexington police officer he had failed to return to the Dismas House, and there was probably an arrest warrant for him. (R. 13, 15, at ¶ 3(f)).

time served in state custody because did not demonstrate outcome of case would have been materially different), *adopted by* 2011 WL 1058922, *1 (S.D. Ohio Mar. 21, 2011); *see also United States v. McAllister*, No. 07-20403, 2013 WL 1703327, at *4 (E.D. Mich. Apr. 19, 2013) (defendant failed to establish prejudice for counsel's failure to provide court with a state order recommending concurrent state and federal sentences because not demonstrated outcome of case would have been different since federal court not bound by state court's recommendation of concurrent sentences).

Moreover, regardless of whether Coleman went to trial or entered a guilty plea, he would not have been entitled to double credit on time served prior to sentencing. 18 U.S.C. § 3585(b). Thus, there would be no benefit to Coleman to insist on going to trial absent receiving such double credit.

Coleman has failed to establish either prong of *Strickland*.[9] Accordingly, it will be recommended that Coleman's ineffective assistance of counsel claim be denied.

### 2. Coleman's Plea was Knowing and Voluntary

To the extent Coleman's arguments can be considered a challenge to the knowing and voluntary nature of his plea, this claim also lacks merit. Coleman argues that he should receive credit toward his current sentence for the time he spent in detention from April 24, 2013, to August 19, 2013, because his attorney and the AUSA told him during plea negotiations that it would be so credited. He argues that he would not have pled guilty but for their assurances.[10] (R. 33, at 3). The record, however, does not support Coleman's claim.

---

[9] Both prongs of the *Strickland* test must be satisfied for the claim to succeed; thus, if a petitioner fails to meet one prong, the court need not consider the other. *Strickland*, 466 U.S. at 697.

[10] Coleman has not set forth specifics of the alleged assurances of counsel or the AUSA other than counsel's statement "I'll see you in eight months." *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("[S]ubsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").

A criminal defendant's guilty plea is valid if it is entered into knowingly and voluntarily as determined under the totality of the circumstances. *See Brady v. United States*, 397 U.S. 742, 747-49 (1970). In the instant action, the transcript of Coleman's plea hearing and the content of the Plea Agreement he signed belie any claim that he did not knowingly and voluntarily enter his plea. *See Baker v. United States,* 781 F.2d 85, 90 (6th Cir. 1986); *Carrillo-Garcia*, 2011 WL 1103855, at **3-4 (claim that plea was not knowing or voluntary because counsel led him to believe he would be credited with time spent in state custody belied by statements made during plea and because no mention of such agreement was referred to by any parties at sentencing).

At the plea hearing, the presiding District Judge fully examined and questioned Coleman as to his understanding of the consequences of entering a plea of guilty, his satisfaction with defense counsel, his waiver of constitutional rights, his understanding of the charge against him, the factual basis for the plea, his understanding that the Court was not bound by the parties' sentencing recommendations, his understanding of the terms of the Plea Agreement, and his admission of guilt. (R. 27). Coleman specifically acknowledged he understood that if the presiding District Judge sentenced him to a sentence more severe than he expected, he would still be bound by his plea. (R. 27, at 12). He nonetheless expressed his desire to enter a plea of guilty. (*Id*.). Although the calculation of sentencing credit is different from the imposition of the sentence itself, this colloquy evidences Coleman understood such agreements by the parties are not binding; yet, it was his desire to plead guilty anyway.

In addition, Coleman was afforded several opportunities to ask questions or make comments, and at no time did he indicate to the Court that his guilty plea was in any way conditioned upon receiving credit for the days spent in detention prior to his sentencing. Coleman's Plea Agreement

13

did not discuss sentencing credit and specifically provided that it was the complete and only agreement between the parties. (R. 15, at ¶ 10). The Agreement further provided that "[t]he United States has not made any other promises to the Defendant." (*Id*.). After the AUSA summarized the Plea Agreement, the Court asked defense counsel if he had anything to add to the Government's presentation of the Agreement, to which counsel replied "I don't think so, Your Honor." (R. 27, at 9-10). The Court then asked Coleman if the Government's recitation was in fact his Plea Agreement, and Coleman replied "Yes, sir." (*Id*. at 10). Neither counsel nor Coleman indicated that the Plea Agreement contained an additional material provision. (R. 27, at 9-10). "It is impossible for a trial judge to properly administer a plea agreement if it consists of secret terms known only to the parties." *Baker*, 781 F.2d at 90 ("where Rule 11 procedures were fully adequate, absent extraordinary circumstances, or some explanation of why defendant did not reveal other terms, at least when specifically asked to do so by the court, a defendant's plea agreement consists of the terms revealed in open court"). Here, both the Court's questioning and Coleman's answers are consistent with a knowing and voluntary entry of the guilty plea, and the express terms of the Plea Agreement contradict Coleman's claim that his plea was conditioned upon further assurances.

Coleman's argument is further negated by defense counsel's statement during sentencing that what was going to happen with respect to Coleman's serve-out date on the prior sentence was unknown, because the BOP had indicated that he may suffer some additional consequences for his escape since it was a violation of BOP rules. (R. 28, at 7-8). Counsel specifically stated, "I don't know if he is completely done with that, if he is going to suffer some additional consequences. I don't know, and he doesn't know." (*Id*.). After this exchange the presiding District Judge asked

14

Coleman if there was anything he wanted to say, and Coleman did not take this opportunity to clarify any issues regarding how his time was going to be calculated or how it impacted his prior sentence.

Coleman's argument is further undercut by the fact that the presiding District Judge specifically ordered the sentence on the escape charge "to run consecutive with the previous sentence imposed in Case No. 07-CR-185-JBC-2." (R. 19). Thus, the Court made clear at sentencing that Coleman would be required to complete his sentence in case 5:07-cr-185-JBC prior to starting his current sentence. When the Court asked Coleman if he had any questions or objections regarding the sentence, Coleman responded "no, it's not going to change nothing, it is what it is." (R. 28, at 12).

In summary, any argument that Coleman's plea was not knowingly and voluntarily entered is contradicted by the record itself. Thus, it will be recommended that this claim be denied.

### C. Evidentiary hearing is not required

In his Reply, Coleman requests an evidentiary hearing, arguing that facts are in dispute as to whether he is entitled to credit on his current sentence for the time he spent in detention prior to sentencing. (R. 33, at 3). Coleman does not dispute that this time was credited to his sentence in 5:07-cr-185-JBC.[11] As discussed above, federal law prohibits awarding dual credit on a federal sentence for time served in detention prior to commencement of the sentence. 18 U.S.C. § 3585(b). Thus, an evidentiary hearing is not necessary because the record conclusively shows Coleman is not entitled to the relief he seeks. *See Kendrick v. Carlson*, 995 F.2d 1440, 1446 (8th Cir. 1993)

---

[11]While Coleman argues in his November 21, 2013, letter to presiding District Judge Hood that the jail time prior to sentencing should not have been credited to his old sentence because he had already served that sentence, the record demonstrates that is not the case. (R. 30). In fact, Coleman admitted in his Plea Agreement that his projected release date prior to his escape was August 17, 2013. (R. 15, at 2).

(evidentiary hearing not required to determine if defendant properly credited with time spent in foreign jail where record demonstrated he was not entitled to relief sought).

To the extent Coleman argues an evidentiary hearing is necessary to determine whether counsel was ineffective for failing to secure such credits, the record demonstrates counsel's conduct was not objectively unreasonable given it is the BOP's responsibility, not that of counsel or the Court, to determine jail credits. Further, the record refutes Coleman's conclusory assertion that his plea was based on assurances that he would be credited with the time he spent in presentence detention toward his current sentence. The Plea Agreement specifically provides that it is the complete agreement between the parties, that the Government has not made any other promises to Coleman, and that Coleman understands the agreement and enters into it voluntarily. (*See* R. 15, 4-5 at ¶¶ 10, 12). Nor did Coleman raise the issue at either his rearraignment or sentencing when the Court asked him if he had any questions or objections to his sentence. *See Craig v. United States*, 513 F. App'x 487, 491-92 (6th Cir. 2013), *cert. denied,* 134 S. Ct. 231 (2013) (defendant's claim that his attorney advised him he would not receive a life sentence if he pled guilty was more conclusory than specific and did not warrant an evidentiary hearing); *Carrillo-Garcia*, 2011 WL 1103855, at *7 (ineffective assistance claim denied without evidentiary hearing, the court finding "[p]etitioner's allegation that defense counsel led him to believe that he would receive a shorter sentence due to time served in State custody is belied by his statements during his guilty plea to the contrary, and because no mention of such agreement was referred to by any of the parties at the time of sentencing.").

Accordingly, it will be recommended that Coleman's request for an evidentiary hearing be denied.

## III. CERTIFICATE OF APPEALABILITY

Federal prisoners who raise claims under § 2241 challenging their federal custody need not obtain certificates of appealability under 28 U.S.C. § 2253(c)(1). *Durham v. United States Parole Comm'n,* 306 F. App'x 225, 229 (6th Cir. 2009); *Melton v. Hemingway*, 40 F. App'x 44, 45 (6th Cir. 2002). Thus, a recommendation will not be made on the issue of a certificate of appealability on the § 2241 claim.

Under Rule 11 of the Federal Rules Governing Section 2255 Proceedings, the district court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to the applicant on his § 2255 claims. A certificate may issue only if he has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (addressing issuance of a certificate of appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought under § 2255). In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*. "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists would not debate the denial of Defendant's § 2255 claims or conclude that the issues presented are adequate to deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it will be recommended that a certificate of appealability on Coleman's § 2255 claims be denied upon the District Judge's entry of his final order in this matter.

## IV. CONCLUSION AND RECOMMENDATIONS

For the reasons stated herein,

**IT IS RECOMMENDED** that:

1. Defendant's Motion to Vacate, Set Aside, or Correct a Sentence under 28 U.S.C. § 2255 (R. 22, 25) be **construed as a hybrid filing** under both 28 U.S.C. § 2241 and § 2255;

2. Defendant's construed hybrid filing under both 28 U.S.C. § 2241 and § 2255 be **denied;**

3. A Certificate of Appealability on Coleman's § 2255 claims be **denied** with the Court's entry of its final order in this matter;

4. Judgment in favor of the United States be entered contemporaneously with the Court's entry of its final order; and,

5. This action be **stricken** from the active docket of this Court.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Report and Recommendation, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 8(b). Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to any or all findings or recommendations for

18

determination, de novo, by the presiding District Judge. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the presiding District Judge and Court of Appeals. *See Thomas v. Arn,* 474 U.S. 140, 155 (1985); *United States v. Walters,* 638 F.2d 947, 950 (6th Cir. 1981).

Dated this 4th day of June, 2014.

Signed By:
*Candace J. Smith*
United States Magistrate Judge

G:\DATA\habeas petitions\2255 R&R general\13-65 Coleman R&R.wpd